UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBIN B.,

          Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

Case No. C18-5630 RAJ

**ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE CASE WITH PREJUDICE**

Plaintiff seeks review of the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the ALJ erred by discounting several medical opinions, her testimony, and her mother's lay witness statement. Dkt. 13. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 39 years old, has a bachelor's degree, and has worked as a nurse assistant, mental retardation aide, and customer service representative. Dkt. 9, Administrative Record (AR) 30. The parties agree that Plaintiff has not engaged in substance abuse since May 2013. AR 26; Dkt. 13 at 7. Plaintiff applied for benefits in May 2014. AR 132. She alleges

ORDER AFFIRMING THE
COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 1

disability as of August 2, 2012. AR 65. Plaintiff's applications were denied initially and on reconsideration. AR 154, 155, 190, 191. After the ALJ conducted a hearing in November 2016, the ALJ issued a decision finding Plaintiff not disabled. AR 60, 15-32.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the August 2012 alleged onset date.

**Step two:** Plaintiff has the following severe impairments: polysubstance dependence, including methamphetamine, heroin, cocaine, benzodiazepines, opioids ("street methadone," Dilaudid, morphine, Vicodin), and cannabis; alcohol/substance withdrawal from various street drugs/substance induced mood disorders/psychosis/psychotic/ schizoaffective disorder/personality disorder/depression/anxiety/agoraphobia/panic disorder/PTSD; tobacco dependence; degenerative disc disease of the cervical spine/feet neuralgia.

**Step three:** These impairments, including the substance use disorders, meet the requirements of listed impairments 12.06 (anxiety and obsessive-compulsive disorders) and 12.08 (personality and impulse-control disorders).[2]

**Drug Addiction and Alcoholism (DAA) Analysis:** Because the ALJ found Plaintiff disabled at step three and there was medical evidence of substance use disorders, the ALJ then repeated the five-step process to determine whether the substance use disorders were a contributing factor material to the determination of disability.

**Step two:** If Plaintiff stopped the substance use, the remaining impairments would continue to be severe.

**Step three:** If Plaintiff stopped the substance use, the remaining impairments would not meet or medically equal the requirements of a listed impairment.

**Residual Functional Capacity:** If Plaintiff stopped the substance use, she could perform light work, lifting/carrying 20 pounds occasionally and 10 pounds frequently and sitting and standing/walking 6 hours per day each. She could frequently stoop, kneel, crouch, and crawl. She would be limited to uncomplicated or routine tasks, no greater than reasoning level 2. She should have no public interaction and only occasional coworker interaction with no tandem tasks, defined as more than one employee required

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER AFFIRMING THE
COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 2

to complete the assigned duty. She could handle few workplace changes and simple work-related decisions.

**Step four:** If Plaintiff stopped the substance use, she could not perform past relevant work. However, her college education would provide direct entry into skilled work in the national economy.

**Step five:** In the alternative, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform if she stopped the substance use.

The substance use disorder was a contributing factor material to the determination of disability because Plaintiff would not be disabled if she stopped the substance use. Accordingly, Plaintiff was not disabled within the meaning of the Social Security Act.

AR 18-32. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1.[3]

**DISCUSSION**

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Each of an ALJ's findings must be supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating evidence, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954, 957 (9th Cir. 2002). When the evidence is susceptible to more

---

[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

than one interpretation, the ALJ's interpretation must be upheld if rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). This Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

**A.    Medical Opinions**

Plaintiff contends the ALJ erred by rejecting the opinions of examining doctors Loreli Thompson, Ph.D., and Terilee Wingate, Ph.D., and non-examining state agency doctors Leslie Postovoit, Ph.D., and Eugene Kester, M.D. Dkt. 13 at 3-5, 7.

An ALJ may only reject the contradicted opinion of an examining doctor by giving "specific and legitimate" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). The ALJ can meet this standard by providing "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citation omitted). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725.

An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citing *Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996)).

**1.    Dr. Wingate**

Dr. Wingate examined Plaintiff in February 2011 and filled out a Psychological/ Psychiatric Evaluation form. AR 853-62. Dr. Wingate diagnosed PTSD, type II bipolar disorder, polysubstance abuse in reported full remission, and personality disorder not otherwise specified with cluster B traits. AR 854-55. Dr. Wingate opined that Plaintiff had marked limitation in the ability to communicate and perform effectively in a work setting with public

contact, and moderate limitation in the abilities to communicate and perform effectively with limited public contact, learn new tasks, perform routine tasks without undue supervision, take appropriate precautions for normal hazards, and maintain appropriate behavior in a work setting. AR 855-56.

The ALJ gave Dr. Wingate's opinions "[l]ittle weight" because they relied on Plaintiff's false self-reports that she had stopped abusing drugs in 2007, because Plaintiff's poor performance on trail-making tests was inconsistent with having obtained a bachelor's degree and performing successfully in graduate school, and because Dr. Wingate's examination and opinions were completed one and a half years before Plaintiff's August 2012 alleged onset date. AR 29.

Plaintiff argues that Dr. Wingate's opinions should be accepted despite being outside the relevant period because they provide "historical perspective" on her impairments. Dkt. 13 at 4. Dr. Wingate's report stated that Plaintiff had been "clean since 2007." AR 858. Plaintiff argues that she was using no more than cannabis at the time of Dr. Wingate's examination, and thus Dr. Wingate's opinions accurately reflect her functional capacity in the absence of drug use. Dkt. 13 at 3-4. In May 2010, Plaintiff reported using cocaine until 2007, opiates until 2008, and methamphetamine until 2010. AR 867. Drug tests in May and October 2012 were positive for opiates, amphetamines, and THC. AR 413-14, 434. In May 2012, Plaintiff told a provider that she used marijuana and methamphetamine "on a daily basis…." AR 405. There is no dispute that Plaintiff is disabled when engaged in substance abuse. AR 22; *see also* AR 428 (treating doctor's "opinion that the patient's THC and amphetamine use are potentially exacerbating her paranoia"). Given the admitted drug use through 2010 and again in 2012, the ALJ reasonably inferred that Dr. Wingate's examination took place when Plaintiff had not achieved a stable

ORDER AFFIRMING THE
COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 5

sobriety. *See Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). Dr. Wingate's opinions thus offered little assistance in determining Plaintiff's RFC in the absence of substance use.

Plaintiff argues that her poor performance on the trail-making tests was not inconsistent with her ability to attend college "years later." Dkt. 15 at 3. Plaintiff was attending an online graduate school at the time of the 2016 hearing, when there is no dispute that her substance abuse had ceased. AR 71. The ALJ reasonably inferred that Plaintiff's trail-making test performance in the 10th percentile was inconsistent with her ability to participate successfully in a graduate program, and thus Dr. Wingate's report did not reflect Plaintiff's abilities in the absence of substance abuse. *See* AR 78 (Plaintiff received A's in graduate classes).

The Court concludes the ALJ did not err by discounting Dr. Wingate's opinions.

**2.     Dr. Thompson**

Dr. Thompson examined Plaintiff in October 2014. AR 637. She diagnosed PTSD, schizoaffective disorder, moderate opioid use disorder on maintenance therapy, and moderate cannabinoid use disorder in reported remission. AR 641. Dr. Thompson opined that Plaintiff had good reasoning ability, understanding, and concentration and persistence, while her memory was "inconsistent" and her social functioning was "limited." AR 642.

Plaintiff argues the ALJ erred by rejecting Dr. Thompson's opinions. Dkt. 13 at 5. The ALJ gave Dr. Thompson's opinions "some weight," finding that they "accurately represent[ed]" Plaintiff's functioning in the absence of substance abuse. AR 28. The ALJ accounted for Dr. Thompson's opinions into the RFC, accommodating memory impairments by limiting Plaintiff to "uncomplicated or routine tasks, … few workplace changes, and simple work-related

decisions" and accommodating social impairments by allowing no public contact, only occasional interaction with coworkers, and no tandem tasks. AR 24.

Plaintiff cites some of Dr. Thompson's findings, for example that Plaintiff's ability to "adapt to routine changes in a typical work setting is likely to be impacted…." Dkt. 13 at 4 (quoting AR 642). Dr. Thompson was obviously aware of her own findings and considered them in developing her ultimate opinions. She listed the quoted finding as support for her opinion that "[s]ocial interaction and interpersonal relationships are limited." AR 642. Accordingly, the ALJ incorporated social and interpersonal limitations into the RFC. Plaintiff also cites Dr. Thompson's statement that her "former work activities" were impacted by impairments, but this clearly relates to the time before stopping substance abuse because Plaintiff has not had a job since then. Dkt. 13 at 4; AR 641. The other findings Plaintiff cites, such as variable reasoning and inconsistent memory and judgment, similarly are adequately addressed by Dr. Thompson's opinions and the ALJ accounted for them in the RFC. Plaintiff fails to show any error in the ALJ's handling of Dr. Thompson's opinions.

**3.    Dr. Postovoit and Dr. Kester**

Dr. Postovoit reviewed Plaintiff's records in November 2014. AR 139. She found that Plaintiff had experienced "[o]ne or [t]wo" extended episodes of decompensation. AR 138. Dr. Postovoit opined that Plaintiff was markedly limited in the ability to interact appropriately with the public and moderately limited in the abilities to interact appropriately with supervisors and coworkers. AR 141. She was moderately limited in the ability to respond appropriately to changes in the work setting, complete a normal workday and workweek, maintain concentration and attention for extended periods, and understand, remember, and carry out detailed instructions. AR 140-41. In March 2015, Dr. Kester reviewed Plaintiff's records and concurred

in Dr. Postovoit's findings and opinions. AR 164, 167-69. Because the state agency determined that Plaintiff was not disabled, no DAA analysis was performed. AR 144, 171.

The ALJ gave "[s]ome weight" to Dr. Postovoit's and Dr. Kester's opinions. AR 28. The ALJ differed only in expressly concluding that "DAA was material to the determination of disability," specifically that the marked limitation and the episodes of decompensation were due to substance abuse. AR 28. Plaintiff argues that Dr. Postovoit's and Dr. Kester's opinions reflect "a time when she was already clean and sober" because she had clean urinalysis results between May 2013 and November 2016. Dkt. 13 at 7; Dkt. 15 at 5.

Plaintiff has not shown any harmful error. The ALJ incorporated the marked limitation on public contact into the RFC by eliminating all public contact. AR 24. Substantial evidence supports the ALJ's finding that any episodes of decompensation occurred during periods of substance abuse. Plaintiff's drug use ended in May 2013 when she was pregnant with her son, who was born in November 2013, and since then she has been caring for a young child, by all accounts successfully. AR 447 (entered drug treatment when 5 months pregnant); AR 70. Nothing in the record suggests any episode of decompensation since May 2013. Although Dr. Postovoit and Dr. Kester did not expressly state when the episodes happened, the ALJ reasonably inferred that the episodes occurred before Plaintiff stopped using drugs and therefore did not reflect her capacity in the absence of substance abuse.

Plaintiff also points to Dr. Postovoit's opinion that Plaintiff's residual mental health issues will result in "some distraction" and unsuitability for "very social" employment. Dkt. 15 at 5 (citing AR 138). But Dr. Postovoit did not consider this mild distractibility and unsociability to rise to a disabling level. Moreover, the RFC contains strong limitations on complicated tasks

and social interaction. AR 24. Plaintiff has not shown any error in the ALJ's treatment of this portion of Dr. Postovoit's opinion.

The Court concludes the ALJ did not err in addressing the non-examining doctors' opinions.

### 4. "Other medical evidence"

Plaintiff recites a selection of medical evidence but offers no argument demonstrating that the ALJ's decision was based on legal error or unsupported by substantial evidence. Dkt. 13 at 5-7. The Court need not address this recitation further. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) ("We do not address this finding because Carmickle failed to argue this issue with any specificity in his briefing.").

### B. Plaintiff's Testimony

Where, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons that are supported by substantial evidence. *Trevizo*, 871 F.3d at 678.

At the November 2016 hearing, Plaintiff testified that she does not "do very well interacting with people," which causes anxiety and difficulty making herself leave the house. AR 81; AR 97-98. Plaintiff "can have [panic attacks] once a day, or … every couple days" whether at home or out in public. AR 93, 94. She can sometimes "talk [her]self down from them" or take medication. AR 93. She sometimes has difficulty concentrating on her graduate course reading. AR 107. On bad days Plaintiff gets "panicky," anxious, emotional, cries up to

four hours a day, and does not want to get out of bed, but she tries to "put on a good front" for her child. AR 104.

The ALJ discounted Plaintiff's testimony based on inconsistent statements and evidence of functional improvement after ceasing drug use. AR 26-27. Although the first reason was erroneous, evidence that Plaintiff's impairments vastly improved after stopping drug use was a sufficient reason to discount her testimony.

1.      **Inconsistent Statements**

Inconsistencies in testimony can be a sufficient reason to discount a claimant's testimony. *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007). Here, however, the inconsistencies the ALJ identified reflect a misunderstanding or mischaracterization of the record.

Plaintiff correctly notes that the ALJ misunderstood Plaintiff's alleged sobriety date. Dkt. 13 at 8-9. Plaintiff testified that she stopped using drugs in April of 2013 or 2012, that she was pregnant at the time, and that her son did not suffer long-term effects from the drug use. AR 85. There is no dispute that Plaintiff's son was born in November 2013, and thus Plaintiff's sobriety date was in 2013. AR 70.[4] Plaintiff's testimony is not, therefore, contradicted by evidence of drug use in 2012. *See* AR 26.

The ALJ found that Plaintiff "changed her testimony" to acknowledge using cannabis after her sobriety date, as recently as five months before the hearing. AR 26; AR 85-86. At the 2016 hearing, the ALJ asked when Plaintiff last used "street substances, including cannabis[,]" which led to the discussion of Plaintiff's sobriety date in "2013 or '12." AR 84-85. The ALJ then sought to clarify that since the sobriety date "you haven't used cannabis either?" and

---

[4] Plaintiff's attorney stated that Plaintiff had been sober since 2012, which likely contributed to the ALJ's misunderstanding. *See* AR 65.

ORDER AFFIRMING THE
COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 10

Plaintiff replied "Oh, I have used cannabis. I didn't know you –…." AR 85. Plaintiff stated that she had a prescription for cannabis, which presumably means she did not consider it a street drug. AR 86. It was unreasonable for the ALJ to infer that this clarification reflected "chang[ing] her testimony." AR 26. *See Batson*, 359 F.3d at 1193.

The ALJ found that Plaintiff did not admit working as a dog sitter until "confronted" with information from the record stating she had worked as a dog sitter. AR 26. This is simply not accurate. When the ALJ asked Plaintiff if she had had "any employment since 2012?" Plaintiff responded "No." AR 80. The ALJ then asked, "You haven't worked anywhere for cash since 2012?" and Plaintiff replied "Uh-uh – I was a dog sitter for two months, but that's [it]." *Id*. Plaintiff was not "confronted" with information from the record. She simply clarified her answer once the ALJ made clear that he was referring to any cash payments at all, not just regular employment.

The ALJ found that Plaintiff's statement that she "does not go out unless accompanied by her [boyfriend]" contradicted her admission that she drives herself to treatment appointments at least twice weekly. AR 26. The Court cannot find anything in the record indicating Plaintiff said she never goes out unaccompanied by her boyfriend. In her 2014 function report, Plaintiff stated that her boyfriend "helps watch [their son] if I have to go somewhere." AR 328. At the 2016 hearing, Plaintiff's counsel asked her what "kind of activities" she did outside the house by herself and Plaintiff replied, "I don't have any activities outside the house, by myself." AR 95-96. Counsel clarified with an example, "What about grocery shopping?" and Plaintiff said she usually goes with her boyfriend. AR 96. The ALJ then asked about treatment appointments, and Plaintiff said she goes by herself. AR 96-97. Plaintiff never testified that she does not leave the house without her boyfriend. Although clearly Plaintiff initially understood "activities" to mean

something optional like hobbies or socializing, she readily acknowledged driving herself to treatment appointments when the scope of "activities" was clarified. Clarification is not the same as intentional inconsistency.

Another factor that the ALJ cited as "casting doubt on the reliability of the claimant's testimony" was that sometime before 2010 she "lost previous employment due to criminal conviction for marijuana manufacture, rather than mere possession or usage, or for any other medically determinable impairment…." AR 26; AR 874. This is not a reason to discount Plaintiff's testimony as to her remaining impairments and limitations after stopping substance use in 2013. And the simple fact of a felony conviction is not a clear and convincing reason to reject a claimant's symptom testimony. *See Buck v. Astrue*, No. 3:10-cv-05519-KLS, 2011 WL 2600505, at *11 (W.D. Wash. June 28, 2011) (holding that "the mere fact that a claimant has been incarcerated or has a criminal history" is not a clear and convincing reason to reject a claimant's symptom testimony).

The ALJ also faulted Plaintiff for giving "inconsistent effort" on a memory test. AR 26. Plaintiff made a mistake in repeating back two digits backwards, but was then able to repeat three and four digits backwards correctly. AR 639. She was also able to repeat back up to six digits forward. *Id*. The ALJ interpreted this raw medical data as inconsistent effort. But the medical professional who administered the test, Dr. Thompson, concluded not that Plaintiff's effort was inconsistent but that her "[m]emory functions are inconsistent." AR 642. "[A]s a lay person, an ALJ is 'simply not qualified to interpret raw medical data in functional terms.'" *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam)); *see also Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) ("the Hearing Examiner, who was not qualified as a medical expert, should not have

gone outside the record to medical textbooks for the purpose of making his own exploration and assessment as to claimant's physical condition."). And the ALJ provided no reason to supplant Dr. Thompson's interpretation with his own. *See Reddick*, 157 F.3d at 725 ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). The ALJ's finding that Plaintiff gave inconsistent effort on a memory test is unsupported by substantial evidence.

None of these supposed inconsistencies is supported by the record. The Court concludes that inconsistent statements was not a clear and convincing reason to discount Plaintiff's testimony.

### 2. Improvement with Sobriety

Evidence of medical improvement, however, undermined Plaintiff's allegations that she remains disabled even in the absence of substance abuse. Plaintiff alleged that she has panic attacks every couple of days, has difficulty focusing on reading for her graduate course work, has difficulty interacting with people, and on bad days cries for several hours. Each of these allegations is undermined by evidence in the record from after her sobriety date.

In contrast to her November 2016 hearing testimony that she has panic attacks every few days, Plaintiff told a treatment provider in October 2016 that she only experienced "early" symptoms of panic attacks about twice a month and was able to cope with them with skills she had learned. AR 915.

In 2016 Plaintiff enrolled in an online graduate program and earned A grades in her first two classes. AR 72, 78.[5] Although Plaintiff testified at the November 2016 hearing that she

---

[5] The ALJ and the Commissioner are incorrect, however, in asserting that Plaintiff completed a bachelor's degree after her 2013 sobriety date. Plaintiff graduated in 2001. AR 296.

sometimes has difficulty concentrating on her course reading, she was able to achieve top grades in all classes she had taken by that time.

While Plaintiff continued to experience anxiety, the record shows that her mental health conditions have largely been successfully treated. In April 2016, a treatment provider described Plaintiff's recurrent major depressive order as "in remission" and Plaintiff felt "stable" on her medications. AR 896. A March 2015 treatment note stated that gabapentin helped with anxiety. AR 583. Risperdal has helped with "voices." AR 846. Although Plaintiff testified to difficulty interacting with people, she is able to attend a methadone clinic twice a week, her son's health appointments, and her own health appointments, all by herself or with her young son. While she may feel like crying for hours on bad days, she is able to hold herself together for the sake of her son. Plaintiff's 2014 Function Report states that "even when [she is] down [she has] to do stuff anyway for [her] baby's sake." AR 328.

Objective medical evidence shows that Plaintiff's mental status improved after she stopped substance abuse. In an October 2016 mental status examination, Plaintiff had normal speech, thought content, reasoning, perception, judgment and insight, memory, fund of knowledge, concentration and attention. AR 904. Anxious mood and affect were the only abnormal findings. *Id*. In contrast, in an October 2012 treatment note, abnormalities were documented in appearance, affect, mood, and insight. AR 430-31.

In short, Plaintiff has made enormous strides since recovering from substance abuse. While other interpretations of the record may be possible, the ALJ's interpretation that Plaintiff's testimony is contradicted by evidence of her mental and emotional competency is rational and must be upheld. *See Burch*, 400 F.3d at 680-81. The Court concludes that evidence of strong

ORDER AFFIRMING THE
COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 14

improvement after ceasing drug use was a clear and convincing reason to discount Plaintiff's testimony. The ALJ did not err by discounting Plaintiff's testimony.

## C. Lay Witness Statements

Plaintiff's mother filled out a Function Report in 2014. AR 302-09. She reported that Plaintiff's anxieties "slow her down" in getting places on time, and she has trouble keeping appointments. AR 302, 306. Plaintiff has shopped excessively and overdrawn her bank account. AR 305. She "used to be afraid to go out." AR 306.

An ALJ may discount lay witness testimony by giving a germane reason. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). The ALJ gave Plaintiff's mother's statement "[s]ome weight" and found that the most severe impairments reported were based on the time when Plaintiff abused substances while Plaintiff's current ability to care for a baby and a dog reflected improvement since stopping substance abuse. AR 29. The ALJ's interpretation of this lay witness statement is supported by substantial evidence. Plaintiff's mother repeatedly observed that Plaintiff's medications helped and that Plaintiff had improved since having a child, *i.e.*, in the time after stopping substance abuse. Plaintiff used to overdraw her bank account but "is better since medication & the baby as motivator." AR 305. Plaintiff used to shop excessively but the "medication has improved that." AR 305. Plaintiff can be argumentative with authority figures but "is better w[ith] medication." AR 308. Plaintiff's mother's statement that Plaintiff used to be able to hold a job but as her anxieties worsened she "always ended up" losing any job clearly reflects the time before Plaintiff's sobriety date, because she has not held or lost a job since then. AR 303; AR 18. Plaintiff's mother ended her report with the following: "Since getting pregnant she has been motivated to get medications in balance and is a good mother. Life still overwhelms her but the medications are helping." AR 309.

In short, Plaintiff's mother's statement supports the ALJ's findings that Plaintiff, while disabled when abusing drugs, improved vastly since stopping drug abuse. The ALJ did not err by giving the statement "[s]ome weight" on this basis.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 29th day of May, 2019.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge